IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**MICHAEL PARKER**,                                    Case No. 1:11 CV 2532

    Petitioner,                                    Judge Patricia A. Gaughan

    v.                                                REPORT AND RECOMMENDATION

**WARDEN, LAKE ERIE
CORRECTIONAL INSTITUTE**,

    Respondent.                                    Magistrate Judge James R. Knepp II

### INTRODUCTION

*Pro se* Petitioner Michael Parker filed a Petition seeking a writ of habeas corpus under 28

U.S.C. § 2254 and the same day filed a motion requesting documents from Respondent. (Doc. 1;

Doc. 2). The Court issued a show-cause order (Doc. 4) and Respondent filed a Return of Writ with

attached exhibits (Doc. 5; Doc. 5-1–5-77). Petitioner requested an extension of time to file his

Traverse, which the Court granted. (Doc. 6; Doc. 7). Then, Petitioner filed a Motion for Leave to

Conduct Discovery pursuant to Habeas Rule 6(a). (Doc. 8). The undersigned denied Petitioner's

Motion to Conduct Discovery and Motion for Documents. (Doc. 14). After requesting extensions

of time to do so (Doc. 15; Doc. 24), Petitioner filed objections to the undersigned's order denying

his Motion to Conduct Discovery (Doc. 24-2). The Court held the undersigned's order not clearly

erroneous or contrary to law, stating reconsideration was not warranted. (Doc. 27).

Between the undersigned's order denying Petitioner's Motion to Conduct Discovery and the

Court's decision regarding Petitioner's objections to that order, Petitioner filed numerous additional

motions. He filed a Traverse (Doc. 16); Motion for Leave to Expand the Record (Doc. 17); and

Motion Demonstrating Necessity for an Evidentiary Hearing (Doc. 18). Respondent opposed both

motions. (Doc. 19). Then, Petitioner filed a Motion to Strike his initial Motion for Leave to Expand the Record, asking to supplement it with an additional document. (Doc. 20). The Court granted that motion. (Doc. 21). Thereafter, Petitioner filed another Motion for Leave to Expand the Record (Doc. 22), which Respondent opposed (Doc. 23). Later, Petitioner filed yet another Motion for Leave to Expand the Record (Doc. 25) and replied to Respondent's oppositions to his previous motions (Doc. 26; Doc. 28).

The matter is currently before the Court on the substance of the Petition, Petitioner's requests to expand the record with additional documentation, and Petitioner's request for an evidentiary hearing. The district court has jurisdiction over the Petition under 28 U.S.C. § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated December 13, 2011). For the reasons discussed below, the undersigned recommends denying and dismissing the Petition, denying the requests to expand the record, and denying the request for an evidentiary hearing.

## FACTUAL BACKGROUND

Pursuant to 28 U.S.C. § 2254(e)(1), findings of fact made by the state court are presumed correct, and the petitioner may only rebut them by clear and convincing evidence to the contrary. *See McAdoo v. Elo*, 365 F.3d 487, 493–94 (6th Cir. 2004). In his traverse, Petitioner argues the Court should not adopt the Eighth District Court of Appeals's factual determinations, arguing the court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the trial court proceeding." (Doc. 16, at 7–8). Specifically, Petitioner takes issue with the state appellate court listing as evidence a cell phone found in his possession. (Doc. 16, at 8).

Petitioner contends that because the jury based his conviction for possession of criminal tools

only on two vehicles, the state appellate court improperly listed the cell phones and other items as evidence supporting his conviction. This treads toward asserted grounds for relief, in effect presenting the Court with a circular argument. The items listed were discovered and presented as evidence supporting the charges against Petitioner. Ultimately, Petitioner fails to provide clear and convincing evidence rebutting the presumption that the state appellate court's factual determinations are correct. The Eighth District Court of Appeals set forth the factual background as follows:

> Using a new confidential informant, Detective Michael Alexander with the Cleveland Police Department initiated a controlled purchase of several pounds of marijuana from co-defendant Robert Moore on February 13, 2009. Officers followed Moore for several hours after the buy until it was apparent to the surveillance detail that Moore had discovered their presence. They then arrested him. Following the arrest, officers searched him and his vehicle and found various items, including a rent receipt dated the same day for a warehouse on South Miles Road in Warrensville Heights, Ohio (the "warehouse").

> Officers executed search warrants for the warehouse and for Moore's residence on Concord Drive in Beachwood, Ohio (the "Concord home"). Appellant was previously the record owner of the Concord home, which he transferred to his father in 2001, and he signed the lease agreement for the warehouse.

> While the officers waited for the search warrants to be approved, they used Moore's keys to enter both the warehouse and the Concord home to secure the premises to ensure no one was inside. After securing these locations, the officers set up surveillance outside and waited for the warrants to be issued. At the Concord home, the officers found close to $400,000, marijuana, packaging materials, drug ledgers, bank statements, guns, ammunition, and a bullet-proof vest. A search of the warehouse revealed suspected drug ledgers, packaging materials, and items for a business that contained the names of appellant and Moore. Officers also found slashed tires, which are indicative of one method used to transport drugs.

> The confidential informant told the police that a large quantity of marijuana would be delivered to Moore. The informant did not know when the delivery would occur, but said it would be delivered by "some Mexicans." Because the detectives knew that Moore had recently paid rent for the warehouse, even though he told officers that this business was no longer operating, they set up surveillance at the warehouse on the night of February 14, 2009 and into the early morning hours the next day.

> Just after 6:00 a.m. on Sunday, February 15, a semi-truck pulled into the warehouse;

3

no other businesses appeared to be open at that time. After the semi-truck pulled into the lot, Det. Alexander stopped a car driving down the driveway to the warehouse. This vehicle, titled to appellant, had two occupants – Tiodoso Higuera and Juan Huerta. These two men were eventually arrested. Appellant arrived a few hours later and was stopped and detained while the police arranged a search warrant to examine the contents of the semi-truck. The police discovered approximately one-and-one-half tons of marijuana, and appellant was arrested.

*Ohio v. Parker*, 2011-Ohio-1059, at ¶¶ 2–6 (Ohio Ct. App. 2011) (internal citations omitted).

## PROCEDURAL BACKGROUND

State Trial Court

On February 18, 2009, Petitioner was indicted by a Cuyahoga County Grand Jury for four counts: (1) possession of drugs with a one-year firearm specification; (2) drug trafficking with a one-year firearm specification; (3) carrying a concealed weapon; and (4) possession of criminal tools. (Doc. 5-2); *see* Ohio Revised Code §§ 2925.11(A), 2941.141, 2925.03(A)(2), 2923.12(A)(2), and 2923.24(A). Each count included a forfeiture provision. (Doc. 5-2). Attorney Steven L. Bradley was assigned to represent Petitioner. (Doc. 5-3, at 28).

Petitioner filed a motion to suppress evidence seized by police during the warrentless stop and subsequent search of Petitioner's truck and its occupants, along with evidence discovered at certain real properties. (Doc. 5-4). The State opposed the suppression (Doc. 5-5; Doc. 5-6; Doc. 5-7), and after a hearing the trial court denied suppression of the evidence on May 29, 2009 (Doc. 5-8). The trial court reopened the hearing pursuant to Petitioner's motion, but after additional testimony the trial court again denied Petitioner's motion to suppress the evidence at issue. (Doc. 5-9).

Appellant's trial was severed from those of his co-defendants, and the indictment was revised accordingly. Appellant also moved to try the forfeiture specification to the bench. *Parker*, 2011-Ohio-1059 at ¶ 9. Following a jury trial (*see* Docs. 5-65–5-75), Petitioner was convicted of drug

possession with the one-year firearm specification and possession of criminal tools with forfeiture specification. (Doc. 5-10; Doc. 5-11). On August 6, 2009, Petitioner was sentenced to an aggregate term of ten years.[1] (Doc. 5-12).

Direct Appeal – Eighth District Court of Appeals

Through new counsel, Petitioner filed a timely notice of appeal in the Eighth District Court of Appeals. (Doc. 5-15; Doc. 5-16). In this appeal, Petitioner alleged the following seventeen assignments of error:

**Original Assignments of Error**

I. The conviction of appellant is in violation of appellant's right to a valid grand jury indictment in contravention of Section X, Article I of the Ohio Constitution.

II. The guilty verdicts are based upon insufficient evidence.

III. The conviction of appellant is against the manifest weight of the evidence.

IV. The trial court erred and/or abused its discretion when it denied the motion to suppress.

V. The trial court abused its discretion and prejudiced Michael Parker [in] several evidentiary rulings.

VI. Michael Parker was denied the effective assistance of counsel.

**Supplemental Assignments of Error**

I. Appellant's due process rights were violated when the state willfully presented false information to the grand jury to secure the indictment.

II. Appellant's right to a fair trial was violated when the trial court impermissibly permitted prejudicial "evidence" it claimed would be excluded.

III. The trial court committed plain error in its instructions to the jury.

---

1. Appellant was sentenced to eight years for drug possession, to be served consecutively to the one-year firearm specification and a one-year term for possession of criminal tools. *Id.* at ¶ 9 n.2.

IV. Appellant was denied the effective assistance of counsel in the failure to object to inadmissible evidence as well as the failure to demand proper jury instructions.

V. The trial court erred when it forfeited all of appellant's non-contraband property without compliance with Ohio's forfeiture statute.

VI. Appellant's due process and equal protection rights were violated by the state's willful presentation of materially false evidence to the grand and petit jury in violation of the 4th, 5th, and 14th Amendments to the United States Constitution, and Article 1, section 10 of the Ohio Constitution.

VII. The trial court's jury instructions invaded the province of the jury and denied appellant a fair trial under the due process clause of the federal constitution.

VIII. The cumulative misconduct of the prosecuter (sic) during the course of trial denied appellant of a fair trial guarenteed (sic) by the 14th Amendment of the United States Constitution, and Article 1, section 10 of the Ohio Constitution.

IX. Appellant's Sixth and Fourteenth Amendment rights were violated when his counsel deliberately concealed key evidence favorable to the appellant.

X. Appellants (sic) conviction for drug possession based solely on his mere association with co-defendant Moore warrants reversal of his conviction and sentence.

XI. The trial court erred when it forfeited all of Appellants (sic) non-contraband property without compliance with Ohio's forfeiture statute under R.C. 2981.02 and R.C. 2981.04.

(Doc. 5-17; Doc. 5-18; Doc. 5-19). The first five supplemental assignments of error were presented by Plaintiff's counsel, and the remaining supplemental assignments of error were submitted *pro se* by Petitioner. (*See* Doc. 5-18; Doc. 5-19). On June 7, 2010, the State filed a response brief (Doc. 5-20); Petitioner's counsel filed a reply brief on August 2, 2010 (Doc. 5-21); the State filed a reply (Doc. 5-22); and Petitioner filed a *pro se* reply to the State's reply (Doc. 5-23). On March 10, 2011, the state appellate court affirmed the trial court's judgment. (Doc. 5-24); *Parker*, 2011-Ohio-1059. This judgment was subsequently amended *nunc pro tunc* to correct errors contained in two

6

paragraphs, and the changes are reflected in 2011-Ohio-1059. (Doc. 5-25).

On March 21, 2011, Petitioner filed a *pro se* application for reconsideration pursuant to Ohio Appellate Rule 26(A). (Doc. 5-26). On April 11, 2011, he filed a *pro se* motion for certification of a conflict. (Doc. 5-27). The Eighth District Court of Appeals denied both these motions. (Doc. 5-28).

<u>Direct Appeal – Ohio Supreme Court</u>

On April 18, 2011, Petitioner filed a timely *pro se* notice of appeal and jurisdiction memorandum in the Ohio Supreme Court, appealing from the March 10, 2011 state appellate court judgment affirming his conviction. (Doc. 5-29; Doc. 5-30; Doc. 5-31). His jurisdiction memorandum asserted the following nineteen propositions of law:

> **Proposition of Law No. 1:** The Court of Appeals decision and [s]tandard of review is contrary to the reasonable application of United States Supreme Court and Ohio Supreme Court decisions in violation of Appellant's right to fair and adequate consideration of his Constitutional claims.
>
> **Proposition of Law No. 2:** The decision of the lower court created a conflicting ruling inconsistent with this "Court" and other Appellate Court's, warranting reconsideration.
>
> **Proposition of Law No. 3:** The conviction of appellant is in violation of appellant's right to a valid grand jury indictment in contravention of Section X, Article 1 of the Ohio Constitution.
>
> **Proposition of Law No. 4:** The guilty verdicts are based upon insufficient evidence.
>
> **Proposition of Law No. 5:** The conviction of appellant is against the manifest weight of evidence.
>
> **Proposition of Law No. 6:** The trial court erred and/or abused its discretion when it denied the motion to suppress.
>
> **Proposition of Law No. 7:** The trial court erred and/or abused its discretion and prejudiced Michael Parker [in] several evidentiary rulings.
>
> **Proposition of Law No. 8:** Michael Parker was denied the effective assistance of counsel.

**Proposition of Law No. 9:** Appellant's due process rights were violated when the state willfully presented false information to the grand jury to secure an indictment.

**Proposition of Law No. 10:** Appellant's right to fair trial was violated when the trial court impermissibly permitted prejudicial "evidence" it claimed would be excluded.

**Proposition of Law No. 11:** The trial court committed plain error in its instructions to the jury.

**Proposition of Law No. 12:** Appellant was denied the effective assistance of counsel in the failure to object to inadmissible evidence as well as the failure to demand proper jury instructions.

**Proposition of Law No. 13:** The trial court erred when it forfeited all of appellant's non-contraband property with compliance with Ohio forfeiture statute.

**Proposition of Law No. 14:** Appellant's due process and equal protection rights were violated by the state's willful presentation of materially false evidence to the grand and petit jury in violation of the 4th, 5th, and 14th Amendments to the United States Constitution, and Article 1, section 10 of the Ohio Constitution.

**Proposition of Law No. 15:** The trial court's jury instructions invaded the province of the jury and denied appellant a fair trial under the Due Process Clause of the Federal Constitution.

**Proposition of Law No. 16:** The cumulative misconduct of the prosecutor during the course of trial denied appellant of a trial guaranteed by the 14th Amendment of the United States Constitution.

**Proposition of Law No. 17:** Appellant's Sixth and Fourteenth Amendment rights were violated when his counsel deliberately concealed key evidence favorable to the appellant.

**Proposition of Law No. 18:** Appellant's conviction for drug possession based solely on his mere association with co-defendant Moore warrants reversal of conviction and sentence.

**Proposition of Law No. 19:** The trial court erred when it forfeited all of appellant's non-contraband property without compliance with Ohio's forfeiture statute under R.C. 2981.02 and R.C. 2981.04.

(Doc. 5-31, at i–iii).

On June 21, 2011, Petitioner filed a *pro se* motion with the Ohio Supreme Court notifying

8

it the appellate court had denied reconsideration and requesting certification of a conflict. (Doc. 5-32). In this motion, Petitioner raised an additional Proposition of Law, claiming a due process violation stemming from the appellate court's alleged inconsistency with federal law: "**Supplemental Proposition of Law No. 1:** A uniform Application of law in contravention of the Fourteenth Amendment to the United States and Ohio Constitution, when the appellate court engaged in unreasonable application of law." (Doc. 5-32, at 3).

On June 22, 2011, the Ohio Supreme Court denied leave to appeal and dismissed Petitioner's appeal as not involving any substantial constitutional question. (Doc. 5-33). On July 19, 2011, the Ohio Supreme Court denied Petitioner's motion to certify a conflict. (Doc. 5-29, at 2). There were no further appeals from those Ohio Supreme Court judgments.

Petition for Post-Conviction Relief

While Petitioner's direct appeal was pending in Eighth District Court of Appeals, Petitioner filed additional *pro se* motions in the state trial court, including a Motion to Inspect Grand Jury Minutes (Doc. 5-34), Petition for Post-Conviction Relief (Doc. 5-35), and Motion for Evidentiary Minutes (Doc. 5-36). In his petition for post-conviction relief, Petitioner presented six claims – some with multiple prongs – which can be summarized as follows:

**Claim 1(A):** African Americans were improperly excluded from the Grand Jury. (Doc. 5-35, at 5–6).

**Claim 1(B):** The State violated Petitioner's due process rights by presenting false or misleading information to the grand jury to secure an indictment. (Doc. 5-35, at 6–7).

**Claim 1(C):** The police lacked probable cause to search and arrest Petitioner. (Doc. 5-35, at 7–10).

**Claim 2:** Petitioner's conviction for possession of drugs was not supported by the weight and sufficiency of the evidence. (Doc. 5-35, at 10–13).

9

**Claim 3:** Petitioner's due process rights were violated because his conviction for drug possession was void where the jury verdict was inconsistent with the charges in the indictment and not unanimous. (Doc. 5-35, at 13–14).

**Claim 4(A):** Petitioner's due process rights were violated because the trial judge "exhibited deep seated interest and favoritism to the Prosecution" by sleeping during the trial, leaving the jury with the impression that he had made up his mind about Petitioner's guilt. (Doc. 5-35, at 14).

**Claim 4(B):** The trial judge violated due process by relying on personal beliefs and sentiment to justify the sentence, rather than evidence presented and statutory sentencing factors. (Doc. 5-35, at 14–15).

**Claim 4(C):** The trial judge violated Petitioner's due process rights and right to confrontation by improperly restricting the examination of State's witness Mr. Madrigal "about the existence of any benefit or agreement in exchange for his testimony". (Doc. 5-35, at 15).

**Claim 5(A)–(H):** Petitioner was denied effective assistance of trial counsel for various reasons. (Doc. 5-35, at 15–22).

**Claim 6:** Petitioner's due process rights were violated because the prosecutor vindictively used the same facts used to indict the co-defendants to indict Petitioner, and indicted Petitioner in retaliation for Petitioner refusing to cooperate in the police investigation. (Doc. 5-35, at 22–23).

The State filed responses opposing the petition for post-conviction relief, the motion for an evidentiary hearing, and the motion for inspection of the Grand Jury minutes. (Doc. 5-37; Doc. 5-38; Doc. 5-39).

On May 28, 2010, the trial court denied Petitioner's motions and petition for post-conviction relief, finding the claims presented were barred by res judicata because they could have been or were presented on direct appeal. (Doc. 40). Petitioner did not file a direct appeal from this judgment.

On June 15, 2010, Petitioner filed a *pro se* motion for relief from judgment pursuant to Ohio Civil Rule 60(B)(5), seeking to vacate the trial court's May 28, 2010 denial of his post-conviction petition. (Doc. 5-41). He argued he was not given adequate time to respond to the State's summary

10

judgment opposition to post-conviction relief. (Doc. 5-41, at 3). The same date, Petitioner also re-filed a petition for post-conviction relief. (Doc. 5-42). The State filed a brief opposing relief from judgment (Doc. 5-43) and Petitioner filed a *pro se* reply (Doc. 5-44). On August 3, 2010, the trial court denied Petitioner's Rule 60(B)(5) motion for relief from judgment, finding Petitioner failed to demonstrate a meritorious defense or claim to present if the trial court did grant relief, and further finding Petitioner failed to show he was prejudiced by the inability to file a response. (Doc. 5-45).

Petitioner filed a timely *pro se* appeal from the trial court's denial of Rule 60(B)(5) relief, presenting the following assignment of error: "The trial court erred and/or abused its discretion when it granted respondent's motion for summary judgment without giv[ing] Petitioner an opportunity to file a response". (Doc. 5-46, at 5–8; Doc. 5-47; Doc. 5-48). The State filed an appellee brief on September 23, 2010. (Doc. 5-49). On March 10, 2011, the Eighth District Court of Appeals overruled Petitioner's sole assignment of error and affirmed the trial court's judgment. (Doc. 5-50, at 5–6); *Ohio v. Parker*, 2011-Ohio-1102 (Ohio Ct. App. 2011). Specifically, the appellate court found Petitioner's post-conviction claims were barred by res judicata and waived, and the court found Rule 60(B) relief was properly denied where Petitioner had improperly used his Rule 60(B) motion as a substitute for appealing the initial denial of his petition for post-conviction relief. *Parker*, 2011-Ohio-1102 at ¶¶ 10–13.

On April 18, 2011, Petitioner filed a timely *pro se* appeal in the Ohio Supreme Court, appealing the appellate court's judgment affirming the denial of Rule 60(B) relief. (Docs. 5-52; 5-53). In his memorandum in support of jurisdiction, Petitioner presented two propositions of law, more or less restating the assignment of error he raised in the appellate court:

**Proposition of Law No. 1:** This Honorable Court's opinion in *State v. Pless*[2] is applicable in the instant case.

**Proposition of Law No. 2:** The trial court erred and/or abused its discretion when it granted respondent's motion for summary judgment without giv[ing] petitioner an opportunity to file a response , and denied appellant's Civ.R. 60(B).

(Doc. 5-54, at i). On June 22, 2011, the Ohio Supreme Court denied leave to appeal and dismissed

Petitioner's appeal as not involving any substantial constitutional question. (Doc. 5-55).

Petition for Writ of Mandamus

While Petitioner's various appeals were pending in the Ohio Supreme Court, Petitioner filed

a *pro se* petition for writ of mandamus in the Eighth District Court of Appeals on April 27, 2011.

(Doc. 5-56; Doc. 5-57). In the petition, Petitioner asked the appellate court to require the trial judge

to issue findings of fact and conclusions of law relative to the May 28, 2010 ruling denying

Petitioner's first petition for post-conviction relief. (Doc. 5-56, at 2–5). The State filed a motion for

summary judgment (Doc. 5-58) and on June 2, 2011, the appellate court granted the State's motion

and denied the writ (Doc. 5-59; Doc. 5-60; Doc. 5-61); *Parker v. Russo*, 2011-Ohio-2667 (Ohio Ct.

App. 2011). Specifically, the appellate court found the trial court's entry denying post-conviction

relief "fulfilled the mandatory requirement of 'findings of fact and conclusions of law' under R.C.

2953.21 . . . and would enable an appellate court to review the judgment on appeal." (Doc. 61);

*Parker*, 2011-Ohio-2667 at ¶ 3.

On June 29, 2011, Petitioner filed a *pro se* appeal in the Ohio Supreme Court, appealing the

appellate court's decision denying the writ of mandamus. (Doc. 5-62; Doc. 5-63). He presented the

following assignment of error: "The decision of the Eighth District Court of Appeals in denying

---

2. 91 Ohio App. 3d 197 (Ohio Ct. App. 1993).

Appellant's Writ of Mandamus violates Appellant's right to procedural due process in violation of the 14th Amendment to the United States Constitution. (Doc. 5-64, at i). On August 25, 2011, the Ohio Supreme Court dismissed Petitioner's appeal for want of prosecution, stating Petitioner had failed to file his merit brief by the deadline. *Ohio ex rel. Parker v. Russo*, 129 Ohio St.3d 1458 (2011); *see also Ohio ex rel. Parker v. Russo*, http://www.sconet.state.oh.us/pdf_viewer/pdf_viewer.aspx?pdf=188728.pdf (last visited January 28, 2013). Petitioner filed a motion for reconsideration on September 6, 2011, stating he had delivered his brief to prison officials prior to the deadline and attaching his receipt. http://www.sconet.state.oh.us/pdf_viewer/pdf_viewer.aspx?pdf=693508.pdf (last visited January 28, 2013). Thus on November 2, 2011, the Ohio Supreme Court granted his motion for reconsideration, vacated the dismissal, and reinstated the cause for briefing on the merits. http://www.sconet.state.oh.us/pdf_viewer/pdf_viewer.aspx?pdf=189464.pdf (last visited January 28, 2013). Petitioner timely filed his merits brief with the Ohio Supreme Court. http://www.sconet.state.oh.us/pdf_viewer/pdf_viewer.aspx?pdf=697371.pdf (last visited January 28, 2013). Thereafter, the Ohio Supreme Court affirmed the appellate court's denial of the writ of mandamus. http://www.sconet.state.oh.us/pdf_viewer/pdf_viewer.aspx?pdf=190613.pdf (last visited January 28, 2013).

*Timely Federal Habeas Petition*

Petitioner filed the instant *pro se* Petition when he placed it in the prison mail system on November 18, 2011. (Doc. 1, at 12). In it, Petitioner challenges his August 6, 2009 convictions, asserting four grounds of relief:

**Ground One:** Petitioner's conviction for possession of drugs with a one-year firearm specification, possession of criminal tools, and forfeiture specifications are not

13

supported by sufficient evidence in violation of the Fourteenth Amendment.

**Ground Two:** Petitioner's right to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments was violated by virtue of trial counsel's deficient performance, depriving the Petitioner of a fair trial.

**Ground Three:** Petitioner's right to a valid grand jury indictment was violated where Petitioner was deprived of a basic protection, which the guaranty of the intervention of the grand jury was designed to secure.

**Ground Four:** The trial court abused its discretion and prejudiced Petitioner by permitting the admission of evidence of other acts under Ohio Evid. R. 404(B).

(Doc. 1, at 5–9).

### DISCUSSION

The undersigned first addresses the merits of Petitioner's first asserted ground for relief – that insufficient evidence supports his conviction – and then addresses Petitioner's remaining claims and motions. Ultimately, the Court should deny and dismiss the Petition and all associated motions because all the claims are noncognizable, procedurally defaulted, or otherwise lack merit.

Ground One – Sufficient Evidence Supports Petitioner's Conviction

In Petitioner's first asserted ground for relief, he claims his convictions for possession of drugs and possession of criminal tools are not supported by sufficient evidence. (Doc. 1, at 5; Doc. 1-1, at 48–68; Doc. 16, at 9–22). He presented this claim on direct appeal in the state appellate court and in the Ohio Supreme Court. (Doc. 5-19, at 32–34; Doc. 5-31, at 4–6).

When the basis for a federal habeas claim has been previously adjudicated by the state courts, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A federal court may grant habeas relief if the state court arrives at a decision opposite

14

to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409–11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).

Due process requires conviction only on proof of guilt beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 309–16 (1979) (citing *In re Winship*, 397 U.S. 358, 362-63 (l970)). The standard for sufficiency of the evidence is: "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19 (emphasis in original). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original). In examining a sufficiency claim, a habeas court can only look to "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318. Even if the federal habeas court would not have convicted the petitioner, "it must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution",

15

and even if a rational trier of fact could not have found a petitioner guilty, the federal habeas court

still must "defer to the state appellate court's sufficiency determination so long as it is not

unreasonable." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing 28 U.S.C. § 2254(d)(2)).

Thus, the Court's task in Petitioner's case is to determine whether it was objectively unreasonable

for the Eighth District Court of Appeals to conclude a rational trier of fact viewing the evidence in

the light most favorable to the prosecution could have found beyond a reasonable doubt that

Petitioner committed the elements of the convictions.

After a jury trial, Petitioner was convicted of possession of drugs, Revised Code §

2925.11(A),[3] and possession of criminal tools, Revised Code § 2923.24(A).[4] The state appellate

court found sufficient evidence showed Petitioner aided and abetted others in the possession of

marijuana and criminal tools, citing the evidence as follows:

> The state presented evidence that appellant arrived at the warehouse – where the
> police found money, scales, ledgers, and other items indicative of a large-scale drug
> operation – several hours after a semi-truck loaded with thousands of pounds of
> marijuana docked. Appellant's name was on the lease for the warehouse. Two co-
> defendants arrived shortly after the semi-truck driving a car titled to appellant. While
> he was under police surveillance, appellant was observed to be in contact with
> Moore, exchanging items. Co-defendant Juan Madrigal testified that appellant had
> been at the warehouse in the past when Madrigal arrived with previous drug
> shipments. A cell phone found in appellant's possession was registered to the same
> California address as several other cell phones in the possession of various co-
> defendants.

*Parker*, 2011-Ohio-1059 at ¶ 27.

Petitioner addresses that evidence and makes the following arguments explaining his view

---

3. "No person shall knowingly obtain, possess, or use a controlled substance or a controlled
substance analog." *Id.*

4. "No person shall possess or have under the person's control any substance, device, instrument,
or article, with purpose to use it criminally." *Id.*

that the evidence was insufficient: (1) He was at the warehouse several hours after the semi-truck arrived filled with thousands of pounds of marijuana not because of the drugs, but to prepare his truck for sale, and regardless his mere presence is not alone sufficient to justify aiding and abetting liability; (2) his name was not on the lease after April 2008 and he did not have access to the interior of the warehouse; (3) despite being titled in his name, the vehicle driven by two co-defendants actually belonged to co-defendant Moore; (4) he met Moore the day prior to the shipment to retrieve a DVD player, which he then had installed in his car, not to exchange contraband or large sums of money; (5) he had never seen Madrigal prior to his arrest, but even if he was at the warehouse when Madrigal made prior shipments, that alone would be insufficient to support his conviction; (6) he purchased his cell phone in Cleveland, Ohio, and therefore the California subscriber address that matched the cell phones in co-defendants' possession must be the default address all independent Boost Mobile vendors use. (Doc. 16, at 16–17).

Even considering Petitioner's explanations for the evidence, which he testified to at trial, the state appellate court's adjudication finding the evidence sufficient to convict him was not an objectively unreasonable application of the *Jackson* sufficiency standard. He cannot show "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Specifically, the state appellate court reasoned, and the undersigned agrees,

> that [while Petitioner] presented plausible explanations for all these occurrences and he was found not guilty of drug trafficking, that does not demonstrate that the jury lost its way in convicting him of drug possession and possession of criminal tools. Appellant's involvement surfaced throughout the investigation and inextricably tied him to thousands of pounds of marijuana in the back of a semi-truck.

*Parker*, 2011-Ohio-1059 at ¶ 29.

Even ignoring the cell phone evidence Petitioner continuously argues was a coincidence and does not support his conviction, sufficient evidence supports his convictions. The day prior to the drug shipment's arrival, he met with co-defendant Moore and gave a box to him, and a police officer testified it was later discovered the box had $30,000 cash in it. (Doc. 5-69, at Tr. 1011–13). Though he contends his name was not currently on the lease for the warehouse, his April 2008 letter to his landlord indicated that despite subleasing the property, he intended to remain responsible for it. (Doc. 5-74, at Tr. 2132–40). Moore – his good friend and similarly indicted co-defendant – was the one who took up making payments on the warehouse, for a defunct business the pair owned together. (Doc. 5-69, at Tr. 1021–22). Two co-defendants showed up to the warehouse after the drug delivery driving a car titled in Petitioner's name. And Madrigal testified Petitioner was present at the warehouse when he made past drug deliveries. Petitioner has strenuously argued the entire situation was a mere coincidence and he was convicted solely due to his association with Moore. But taking all this evidence together, the Court cannot say *no* rational trier of fact could have found Petitioner guilty beyond a reasonable doubt of aiding and abetting the possession of marijuana, or of possessing criminal tools, and the Eighth District Court of Appeals did not make an unreasonable decision when it concluded the same.

Ground Four Presents a Noncognizable State Law Issue

Petitioner's fourth asserted ground for relief alleges the trial court erred by permitting evidence of "other acts" in violation of Ohio Evidence Rule 404(B). (Doc. 1, at 9). He presented this claim on direct appeal in both the appellate court and the Ohio Supreme Court. (Doc. 5-17, at 34–35; Doc. 5-31, at i). Specifically, Petitioner argues the trial court erred by allowing Madrigal – the co-defendant driving the semi-truck filled with marijuana – to testify he had seen Petitioner at the

warehouse when he delivered drugs on two prior occasions. (Doc. 16, at 48–51).

"Federal habeas courts review state court evidentiary decisions only for consistency with due process." *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001) (citing *Patterson v. New York*, 432 U.S. 197, 202 (1977)). The Court cannot grant a writ of habeas corpus based on disagreement with state-court determinations on state-law questions unless the state-court's determination was so fundamentally unfair as to deprive the defendant of due process. *Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Bey v. Bagley*, 500 F.3d 514, 519–20 (6th Cir. 2007) ("a state court's violation of its own evidentiary law does not, *ipso facto*, provide a basis upon which a federal court may grant habeas relief.")). Moreover, "the category of infractions that violate fundamental fairness is defined very narrowly", including only state evidentiary rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2007) (quoting *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000); *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)).

The Eighth District Court of Appeals denied Petitioner's claim regarding evidence of other acts. *Parker*, 2011-Ohio-1059. Explaining, the appellate court stated,

> With regard to the admissibility of 'other acts' evidence, it is well established that evidence tending to prove that the accused has committed other acts independent of the crime for which he is on trial is inadmissible to show that the defendant acted in conformity with his bad character. . . .
>
> However, R.C. 2945.59 states: 'In any criminal case in which the defendants (sic) motive or intent, the absence of mistake or accident on his part, or the defendants (sic) scheme, plan, or system in doing an act is material, any acts of the defendant which tend to know his motive or intent, the absence of mistake or accident on his part, or the defendants (sic) scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of

19

another crime by the defendant.

*Parker*, 2011-Ohio-1059 at ¶¶ 62–63. Though Petitioner argued the testimony from Madrigal was prejudicial "other acts" evidence that should not have been permitted at trial, "Madrigal testified that, in the past, appellant was present at the warehouse at least once before when Madrigal arrived with a shipment of marijuana." *Id.* at ¶ 64. As the state appellate court explained, "[t]his evidence tends to negate appellant's argument that he had no knowledge of the drugs being present."*Id.* Thus, because knowledge was a central element of the state's aiding and abetting case, because Madrigal's testimony showed a lack of mistake on Petitioner's part in arriving at the warehouse, *and* because the trial court advised the jury to view Madrigal's accomplice-testimony with "grave suspicion", the Eighth District Court of Appeals found there had been no violation of Ohio Evidence Rule 404(B). *Id.* at ¶¶ 66–67.

Having considered the state appellate court's decision, the undersigned agrees with Respondent that Petitioner's fourth asserted ground of relief is noncognizable. Ohio Evidence Rule 404(B) provides that evidence of other acts is inadmissible to show action in conformity therewith, but is admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Madrigal testified Petitioner was present at the drug warehouse on two prior occasions, months prior to Petitioner's arrest, when Madrigal unloaded drug shipments from his semi-truck. (Doc. 5-71, at Tr. 1384–94, 1400–04, 1451–52). He admitted he did not know Petitioner's name until they were all arrested, but nevertheless recognized Petitioner from his previous deliveries to the warehouse. (Doc. 5-71, at Tr. 1451–52). As the state appellate court correctly observed, Madrigal's testimony shows lack of mistake in Petitioner arriving at the warehouse several hours after the drugs were delivered, and also shows knowledge – a central

element of the State's aiding and abetting case against Petitioner. As the Sixth Circuit stated in *Bey*, "*all* evidence tending to prove guilt is prejudicial to a criminal defendant", but like in that case, the critical point here is that nothing indicates the prejudice was unfair. *Bey*, 500 F.3d at 522 (emphasis in original).

Petitioner notes the trial court allowed Madrigal's testimony because it tended "to show motive, plan or intent." (Doc. 5-68, at Tr. 733–35). He takes issue with the fact that the state appellate court affirmed based on finding the evidence was admitted to show knowledge. (Doc. 16, at 50). Petitioner attempts to persuade the Court the state appellate court erred by stating the evidence was admitted to show knowledge, when the trial court stated it admitted the evidence to show motive, plan, or intent. However, Petitioner overlooks the fact that the state appellate court also specifically stated Madrigal's testimony showed a lack of mistake on Petitioner's part, along with the fact that knowledge was the requisite mens rea for the offenses charged. And the fact remains: Madrigal's testimony would have been admissible to show motive, plan, intent, knowledge, or absence of mistake, along with the other exceptions listed in Ohio Evidence Rule 404(B). At trial, Petitioner testified he was not at the warehouse when Madrigal dropped off his previous shipments, he first met Madrigal when he was arrested, he was going to the warehouse that day to clean out one of his trucks, and he was not aware of marijuana being at the warehouse. (Doc. 5-74, at Tr. 2089–91, 2102, 2108–09). Madrigal's testimony, therefore, was relevant to show Petitioner knew the marijuana would be there and also rebuts Petitioner's argument that he arrived there hours after the drug shipment merely by mistake.

Madrigal's testimony fell within the exceptions listed in Ohio Evidence Rule 404(B); Plaintiff's counsel challenged Madrigal's testimony in pre-trial motion in limine proceedings; his

counsel had a full and fair opportunity to cross-examine Madrigal; Petitioner rebutted Madrigal's testimony with his own; the trial court instructed the jury on the knowledge element of the State's aiding and abetting theory; and the trial court instructed the jury to view Madrigal's accomplice testimony with "grave suspicion" and "great caution". (Doc. 5-68, at Tr. 727–37; Doc. 5-71, at Tr. 1435–62; Doc. 5-74, at Tr. 2089, 2102, 2108–09, 2187–89, 2202–05). Because Petitioner cannot show unfair prejudice from the testimony's admission, he has not demonstrated a due process violation. *See Bey*, 500 F.3d at 522–23. And because Petitioner cannot show the state court's determination deprived him of due process, he has not alleged a cognizable federal habeas claim. *See Wynne*, 606 F.3d at 871 (citing *Estelle*, 502 U.S. at 68).

Ground Two is Procedurally Defaulted and Otherwise Lacks Merit

Petitioner's second asserted ground for relief alleges his trial counsel provided ineffective assistance by failing to request a limiting instruction on 404(B) evidence and failing to present exonerating evidence. (Doc. 1-1, at 71). The first part of this argument ties this ground for relief to Petitioner's fourth asserted ground for relief, which the undersigned already addressed and concluded was noncognizable. (Doc. 1, at 9; 1-1, at 97–105).

In his direct appeal, Petitioner argued he was deprived of ineffective assistance of counsel a number of ways. He argued trial counsel was ineffective in not requesting a limiting instruction relative to Madrigal's 404(B) testimony; did not present exonerating evidence regarding the fact Petitioner did not make payments on the drug warehouse after April 2008; did not present exonerating evidence in the form of checks and the lease agreement detailing Petitioner was not paying for the warehouse; and did not present testimony from key witnesses who would have supported Petitioner's defenses. (Doc. 5-17, at 39–40; Doc. 5-18, at 4; Doc. 5-19, at 29–32). He also

presented these issues to the Ohio Supreme Court. (Doc. 5-31).

A prisoner in state custody may only challenge his custody "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, federal habeas relief is only available if the state court proceedings deprived the petitioner of a right guaranteed by the Constitution or federal law, *Pulley v. Harris*, 465 U.S. 37, 41 (1984), and "does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). When state courts have previously adjudicated the basis for a federal habeas claim, the AEDPA provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A federal court may grant habeas relief if the state court arrives at a decision opposite that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The appropriate measure is whether that state adjudication was "objectively unreasonable". *Id.* at 409-11.

The benchmark for a claim of ineffectiveness of counsel is whether counsel's conduct "so undermined the proper functioning of the adversarial process" that the trial court could not have produced a just result. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To determine whether counsel's conduct was so egregious as to render the trial fundamentally unfair, the petitioner must demonstrate two components. First, that counsel's performance was deficient. Such a showing requires evidence that counsel made very serious errors. *Id.* Second, the petitioner must demonstrate prejudice by showing counsel's actions made a reliable trial result impossible. *Id.* Unless a petitioner makes *both* showings, the ineffective assistance of counsel claim fails. *Id.* Moreover, there is a

23

strong presumption counsel's conduct falls within acceptable limits, so the burden is high. *Tibbetts v. Bradshaw,* 633 F.3d 426, 442 (6th Cir. 2011).

The Eighth District Court of Appeals denied Petitioner's claim for ineffective assistance of counsel, applying the federal *Strickland* standard. *Parker*, 2011-Ohio-1059 at ¶¶ 80–88. The appellate court found Petitioner's trial counsel was not ineffective by failing to introduce evidence showing appellant had not paid rent on the warehouse since April 2008 because appellant testified to that information, placing it before the jury for their consideration. *Id.* at ¶ 86. Further, the appellate court found Petitioner failed to show the outcome of his trial would have been different had counsel timely objected to various items, thus failing to satisfy the requirement to show a reasonable probability that the result would have been different but for counsel's errors. *Id.* at ¶ 87.

Petitioner makes much of the fact that the state appellate court said he "failed to show that the outcome of the trial *would* have been different", *Parker*, 2011-1059 at ¶ 87 (emphasis added), arguing the appellate court improperly applied the *Strickland* standard, which merely requires a petitioner to show a *reasonable probability* the result would have been different. (*See* Doc. 16, at 26–28). But the appellate court was applying a plain error rule because it found Petitioner had failed to request a limiting instruction during trial and therefore effectively waived his complaints about character evidence instructions. *Id.* at ¶ 95. Moreover, even applying the reasonable-probability standard, Petitioner cannot establish ineffective assistance of counsel.

The Eighth District Court of Appeals specifically noted Petitioner's complaint with regard to jury instructions was waived because he did not request a character instruction or otherwise object to the instruction given. *Id.* at ¶ 95 (citing *State v. McGrath*, 2010-Ohio-4477, ¶ 90 (Ohio Ct. App. 2010)). Because Petitioner failed to contemporaneously object to the jury instruction, the jury

24

instruction is subject to plain-error review, and "does not amount to plain error unless, but for the error, the result of the trial clearly would have been different." *Id.* (internal citations omitted); *see also United States v. Anderson*, 76 F.3d 685, 689 (6th Cir. 1996) ("defendant waived his right to appeal the jury instructions by not making a contemporaneous objection"). Here, the appellate court found Petitioner waived any error by not contemporaneously objecting to the jury instructions, finding no plain error because Petitioner could not demonstrate the trial's outcome would have been different with a character evidence instruction. *Parker*, 2011-Ohio-1059 at ¶ 95.

The doctrine of procedural default bars federal habeas courts from reviewing federal claims state courts declined to address due to a petitioner's failure to comply with state procedural requirements. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). Procedural default occurs when the last state court rendering a decision makes a "plain statement" basing its judgment on a procedural bar. *Harris v. Reed*, 489 U.S. 255, 265 (1989). The Sixth Circuit applies a four-part test to determine whether a petitioner's grounds for relief are procedurally defaulted:

> First, the federal court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with that rule. Second, the federal court must determine whether the state courts actually enforced the state procedural sanction – that is, whether the state courts actually based their decisions on the procedural rule. Third, the federal court must consider whether the procedural rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim. . . . Fourth, if the federal court answers the first three questions in the affirmative, it would not review the petitioner's procedurally defaulted claim unless the petitioner can show cause for not following the procedural rule and that failure to review the claim would result in prejudice or a miscarriage of justice.

*Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (internal citations omitted)).

Here, the procedural rule at issue is the requirement to contemporaneously object to jury

instructions. The state courts actually enforced the procedural sanction as the appellate court relied on it to apply a plain-error standard of review, and it is an adequate and independent state ground. Because of that, under the fourth *Maupin* factor, this Court could only consider Petitioner's claim if Petitioner showed cause for not following the procedural rule and failure to review the claim would result in prejudice or a miscarriage of justice.

A petitioner may overcome procedural default by showing both cause for the failure to comply with the state procedural rule and prejudice resulting from the alleged constitutional violation. *See Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998). Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla*, 370 F.3d at 498 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires a petitioner to show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

In certain circumstances, "counsel's ineffectiveness in failing to properly preserve the claim for review in state court" can constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Murray v. Carrier*, 477 U.S. 478, 490–92 (1986)). To excuse procedural default, counsel's deficiency must have been so ineffective as to be an independent constitutional claim itself. *Id.* Petitioner must show a reasonable probability that but for his counsel's errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Here, Petitioner cannot show ineffective assistance of counsel because he cannot show a reasonable

26

probability the outcome would have been different but for errors by counsel. First, Madrigal's testimony was certainly admissible to prove Petitioner's knowledge, absence of mistake, motive, plan, or intent. Second, the remaining evidence of Parker's guilt was strong, as the undersigned explained discussing the sufficiency of the evidence. Furthermore, the trial court warned the jury to view Madrigal's testimony with grave suspicion. Due to these factors, Petitioner cannot show a reasonable probability that but for his counsel's failure to ask for a limiting instruction, the result of his trial would have been different. Therefore, ineffective assistance of counsel cannot be used as cause to excuse the procedural default that occurred when Petitioner failed to contemporaneously object to the jury instructions.

Likewise, Petitioner's trial counsel was not ineffective in failing to introduce exonerating evidence. With regard to the evidence allegedly showing Petitioner no longer paid rent for the warehouse after April 2008, there is not a reasonable probability the outcome of the trial would have been different if Petitioner's counsel had offered the lease agreement and checks as evidence. Even if his last rent check was in April 2008, the remaining evidence of Petitioner's guilt was strong. Further, Petitioner testified he notified his landlord in April 2008 he would be subleasing the warehouse space, "which will allow our account to remain in good standing." (Doc. 5-74, at Tr. 2132–40). This concern with his account remaining in good standing tends to show he intended to remain responsible for the original lease, despite his plans to sublease the premises. Petitioner also testified he did not pay rent on the warehouse after April 2008 (*see* Doc. 5-74, at Tr. 2132–40), so that fact was in evidence for the jury to consider despite the lack of cancelled checks in the record. And even if everything Petitioner says is true, the person paying rent on the warehouse was Moore – a person the investigation inextricably linked to Petitioner. Thus, Petitioner cannot show a

27

reasonable probability the outcome of his trial would have been different if his counsel had offered the lease agreement and checks as evidence, and he cannot prove ineffective assistance of counsel by this means.

Petitioner also argues his counsel was constitutionally deficient because he failed to call two witnesses, whose testimony Petitioner believes would have resulted in a different verdict. (Doc. 16, at 36–41). Specifically, Petitioner argues his counsel should have called co-defendant Moore to testify. (Doc. 16, at 38–40). He notes an affidavit from Moore, which he submitted in support of his motion requesting post-conviction relief, in which Moore stated Petitioner had no knowledge of the drugs in the semi-truck or the warehouse, was not present during prior drug shipments, did not exchange contraband with Moore, did not know how Moore used the GMC Envoy titled in Petitioner's name, and relinquished control of the warehouse in April 2008. (*See* Doc. 16, at 39; Doc. 5-42, Ex. B). Petitioner also argues his attorney should have called Peter Wairegi – property manager for the warehouse – to testify. (Doc. 16, at 40). He submitted an affidavit from Wairegi with his motion for post-conviction relief that stated Petitioner no longer controlled the warehouse after March 31, 2008, stopped making rent payments (at which point Moore began making the payments), the original lease expired March 31, 2008, and Petitioner and Moore then made arrangements to continue using the property. (Doc. 16, at 40; Doc. 5-42, Ex. C). According to Petitioner, testimony from Moore and Wairegi would have convinced the jury Petitioner no longer had control over the warehouse, creating a reasonable probability the jury would not have convicted him. (Doc. 16, at 41).

Petitioner correctly points out the Eighth District Court of Appeals did not address this particular issue on direct appeal. *See Parker*, 2011-Ohio-1059 at ¶¶ 80–88. Under *Strickland*, "the

defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. Here, nothing in the record indicates the reason Petitioner's trial counsel did not call Moore and Wairegi to testify. Trial counsel could have rationally concluded it was better trial strategy not to present testimony from these two witnesses, particularly Moore, who was Petitioner's lifelong friend and indicted on similar charges stemming from the same facts. In the absence of evidence "indicating defense counsel's reasons for not presenting this evidence", the Court should "presume that 'counsel's conduct falls within the wide range of reasonable professional assistance' guaranteed by the Constitution." *Hutchinson v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002) (quoting *Cone v. Bell*, 535 U.S. 685, 702 (2002)); *see also Milini v. Smith*, 2011 WL 720749, *9 n.5 (N.D. Ohio 2011), *adopted by* 2011 WL 703921. Simply put, Petitioner cannot show ineffective assistance of counsel based on his attorney failing to call these two witnesses because he has not shown anything overcoming the strong presumption that his counsel's decisions were part of a sound trial strategy.

<u>Ground Three is Noncognizable and Otherwise Lacks Merit</u>

In his third asserted ground for relief, Petitioner argues his right to a valid grand jury indictment was violated because the indictment did not satisfy the Due Process Clause's fair notice requirement. (Doc. 16, at 42–47). Petitioner raised this ground for relief on direct appeal in the state appellate court and the Ohio Supreme Court. (Doc. 5-17, at 24–26; Doc. 5-31, at 10).

The Sixth Circuit holds "[b]eyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (citing *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986)). Where an indictment has sufficient information to provide a petitioner with adequate notice of the charges against him and the

opportunity to defend and protect himself against future prosecution for the same offense, the indictment satisfies the Due Process Clause's notice requirement. *Mira*, 806 F.2d at 639. Due process only requires "that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged." *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984). Absent a due process notice violation, a federal court cannot rule on a petitioner's claimed deficiencies in a state indictment. Here, because Petitioner's indictment satisfied the notice requirement and there was no denial of fundamental fairness, his third asserted ground for relief is noncognizable and lacks merit.

When the state appellate court reviewed Petitioner's claim, it noted Ohio appellate courts apply a structural-error analysis to review an indictment. *Parker*, 2011-Ohio-1059 at ¶ 13. "Structural errors are constitutional defects that defy analysis by harmless error standards because they affect[] the framework within which the trial proceeds, rather than simply [being] an error in the trial process itself." *Id.* (internal citations omitted). Petitioner argues the indictment listed several periods of time alleging when he possessed drugs, and also argues the indictment failed to state which marijuana he was charged with possessing, leaving him "unable to mount a defense to the charges." (Doc. 16, at 44; *see also* Doc. 1-1, at 91–92). But Petitioner cannot show the indictment failed to provide him with adequate notice of the charges pending against him.

In the charge originally labeled Count Four, the indictment shows the Grand Jury found Petitioner and co-defendants "did knowingly obtain, possess, or use a controlled substance, to-wit: Marijuana, a Schedule I drug, in an amount equal to or exceeding 20,000 grams" between the dates of February 13, 2009 and February 15, 2009. (Doc. 5-2, at 7). The appellate court correctly found the indictment alleged only one instance where marijuana exceeded 20,000 grams – the shipment

of drugs to the warehouse on the semi-truck – but that Petitioner's assistance in obtaining these drugs occurred over several days. *Parker*, 2011-Ohio-1059 at ¶ 16. The appellate court ultimately found the indictment tracked the language of the statute – Revised Code § 2925.11(A) – and placed Petitioner on notice of the charges, further finding the indictment was not impermissibly amended. The undersigned agrees.

Petitioner argues the indictment leaves him no way of knowing which drugs the indictment alleged he possessed. (Doc. 16, at 44). However, when Petitioner's counsel moved to dismiss original Count Four from the indictment using the same argument, the State clarified that the charges referred to the drugs seized from the warehouse on February 15, 2009 when Madrigal's semi-truck delivered the marijuana, and the trial court denied the motions to dismiss. (Doc. 5-68, at Tr. 613, 628–33). Petitioner also stipulated the marijuana came from the semi-truck and warehouse, further stipulating the marijuana seized from these locations weighed more than 20,000 grams. (Doc. 5-74, at Tr. 2179–80). Though the indictment was amended to apply specifically to Petitioner and eliminate reference to his co-defendants (Doc. 5-68, at Tr. 618–23), the amendment did not change the identity of the offenses, the dates, or the amounts of marijuana. In his direct appeal, Petitioner relied on *Ohio v. Vitale*, 96 Ohio App.3d 695 (Ohio Ct. App. 1994) and argued the amendment impermissibly changed the indictment. (Doc. 5-17, at 24–26). But the state appellate court correctly distinguished *Vitale*: "In that case, the state amended the indictment to change the identity of the crimes after presentation to the grand jury", but in Petitioner's case, the indictment was amended "only to reflect the separation of co-defendants." *Parker*, 2011-Ohio-1059 at ¶ 14–15.

The indictment tracked the language of the statute and properly listed the elements of the statute Petitioner was charged with violating; Petitioner stipulated to the amount and location of the

31

marijuana; and Petitioner vigorously defended against the allegations that he aided and abetted co-defendants in possessing the marijuana in the warehouse and semi-truck. Thus, he cannot show the indictment failed to give fair notice so as to prove a due process violation. And "[b]eyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Baker*, 316 F.3d at 570.

The Court Should Deny Petitioner's Motions to Expand the Record and for an Evidentiary Hearing

Through two motions, Petitioner seeks to expand the record with various evidence the state courts did not consider. He wishes to introduce: (1) evidence relating to co-defendant Madrigal's judicial release, claiming this evidence supports Petitioner's "claims that Madrigal's testimony was induced for a downward departure, and not for its veracity" (Doc. 17, at 4); (2) the bill of particulars, to show neither the indictment or bill of particulars specifically described whether Petitioner was charged with possessing the drugs in the warehouse or in the semi-truck and which he therefore claims supports his third asserted ground for relief based on his indictment (Doc. 17, at 5); (3) a declaration from co-defendant Juan Huerta stating he did not contact Petitioner when he arrived in Cleveland and did not know or meet Petitioner prior to the date they were both arrested, which Petitioner claims supports his insufficient evidence argument (Doc. 17, at 6); and (4) the Boost Mobile Terms and Conditions, which Petitioner contends "unequivocally supports [his] contentions that the subscriber's address . . . is not an indication that a phone was purchased at a particular address or location, but rather is the address that Boost Mobile uses for its subscribers to resolve any disputes." (Doc. 22, at 2; *see also* Doc. 25[5]). Because none of this evidence was before the state courts, the Court should deny all Petitioner's motions to expand the record.

_____

5. Docs. 22 and 25 both seek to introduce the Boost Mobile Terms and Conditions.

Habeas Rule 7 permits federal habeas courts to "direct the parties to expand the record by submitting additional materials relating to the petition", Rules Governing § 2254 Cases, Rule 7, 28 U.S.C. foll. § 2254 (2010), but expansion of the record is not mandatory and "is left to the discretion of the trial judge". *Ford v. Seabold*, 841 F.2d 677, 691 (6th Cir. 1988), *cert. denied*, 488 U.S. 928 (1988). As the undersigned noted denying Petitioner's motion to conduct discovery, "any petition seeking relief under § 2254(d) – whether under subsection (d)(1) or (d)(2) – must rely solely on the evidence presented to the state courts." (Doc. 14); (*see also* Doc. 27 ("The Magistrate Judge correctly recognized that review in habeas proceedings is limited to the record before the state court, and the habeas court cannot consider the contents of outside discovery for claims previously adjudicated on the merits in state courts.")). In *Cullen v. Pinholster*, 131 S.Ct. 1388, 1399–1400 (2011), the Supreme Court found that when considering whether a state court's decision was contrary to federal law under § 2254(d)(1), the federal habeas court can only consider evidence the record that was before the state court. Indeed, the Supreme Court found "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." *Id.* at 1399. And as Justice Sotomayor noted in her dissent, § 2254(d)(2) certainly restricts federal habeas courts to evidence presented in state courts. *Id.* at 1415–16 (Sotomayor, J., dissenting). Therefore, because a federal habeas court's review is limited to the record in existence at the time of the state court adjudication, evidence introduced only in federal habeas proceedings is irrelevant.

Because each of Petitioner's habeas claims was adjudicated on direct appeal in the state courts and most of the evidence he seeks to introduce here was not used by the state courts in adjudicating his claims, this Court cannot use the additional evidence in reviewing Petitioner's

claims. Petitioner attempts to persuade the Court that Respondent was incorrect to assert the state court did not consider the evidence he wishes to add to the record. (Doc. 26, at 3). He goes on to state he believes Madrigal's testimony was not based on facts, but rather through an induced agreement (Doc. 26, at 3); he cites Madrigal's testimony that, while he had not yet made a plea deal when he testified against Petitioner, he intended to plead guilty with the expectation he would receive a more lenient sentence (Doc. 26, at 4–7); he states the state appellate court considered the bill of particulars and found it alleged "only one instance where petitioner participated in the acquisition of more than 20,000 grams of marijuana – the shipment of drugs on the semi-truck – but that his assistance in obtaining these drugs occurred over the span of three days" (Doc. 26, at 7–8); he states Huerta's declaration was a sworn declaration (Doc. 26, at 8–9); and he states the state appellate court relied on evidence regarding the address associated with the cell phones to affirm his conviction (Doc. 28, at 3).

Petitioner's arguments with regard to Madrigal, Huerta, and the cell phone policy do not change the underlying issue: The judicial release information was not considered by the state courts; Huerta's declaration was not considered by the state courts; and the cell phone policy was not considered by the state courts. Therefore, this evidence falls outside the scope of federal habeas review. Moreover, it is unclear what more Petitioner could prove with the judicial release information. Madrigal told the jury he was testifying in the hopes of obtaining a more lenient sentence, but the details of his plea deal had not yet been finalized. It is unclear how evidence showing Madrigal in fact received the benefit he expected to receive by testifying would bolster Petitioner's claim that his testimony was induced. Madrigal admitted he expected a deal in front of the jury and the trial judge warned the jury to consider his testimony with grave suspicion. Also,

34

Petitioner has not made any argument explaining why he could not have discovered and presented the cell phone policy at his trial. And information relating to Boost Mobile and addresses associated with cell phones was a subject of Petitioner's motion to conduct discovery, which this Court already denied because it was not before the state courts. (*See* Doc. 8-8; Doc. 14, Doc. 27).

The bill of particulars is not in the record, but Petitioner correctly points out the Eighth District Court of Appeals referenced this item. (Doc. 16, at 33–36); *Parker*, 2011-Ohio-1059 at ¶ 16. Nevertheless, expansion of the record is not required, and remains in the discretion of the trial judge. *Ford*, 841 F.2d at 691. Because the Petition should be denied and dismissed even if the bill of particulars is considered, there is no reason to place the bill of particulars in the record.

Petitioner's allegation regarding the bill of particulars appears to be that it would support his third asserted ground for relief – that the indictment deprived him of his constitutional right to fair notice of the charges against him. He contends neither the indictment or bill of particulars allege he participated in the acquisition of more than 20,000 grams of marijuana and thus argues the appellate court made an unreasonable determination of facts. However, the indictment quite clearly alleges the elements of the crime Petitioner was charged with committing. The charge originally labeled as Count Four lists Revised Code § 2925.11(A) and charges Petitioner with committing that offense between February 13, 2009 and February 15, 2009. (Doc. 2, at 7). Section 2925.11(A) prohibits anyone from knowingly obtaining, possessing, or using a controlled substance, and the indictment specifically states that the Grand Jurors found probable cause to believe Petitioner "did knowingly obtain, possess, or use a controlled substance, to-wit: Marijuana, a Schedule I drug, in an amount equal to or exceeding 20,000 grams." (Doc. 2, at 7). As described above, the indictment satisfied Petitioner's right to fair notice under the Due Process Clause. Therefore, there is no reason to

35

supplement the record with the bill of particulars – which elaborates on the details of the State's theory that Petitioner's assistance in obtaining the drugs over the span of several days but casts no confusion on the charges in the indictment.[6]

Petitioner also argues he is entitled to an evidentiary hearing "for a just resolution" of his habeas claims. (Doc. 18, at 5). The remainder of Petitioner's argument supporting his request for an evidentiary hearing essentially reiterates the arguments he presented for each asserted ground for relief. (*See* Doc. 18, at 5–21). However, Petitioner's habeas claims have been adjudicated by the state courts and he is not entitled to an evidentiary hearing on evidence not considered by the state court. *Pinholster*, 131 S.Ct. At 1399 ("when the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'") (citing *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)).

Even if Petitioner's request for an evidentiary hearing was not barred from review, he does not meet the standard for an evidentiary hearing, established in 28 U.S.C. § 2254(e)(2):

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
>
> (A) the claim relies on–
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

---

6. Additionally, Plaintiff actually stipulated to the amount of marijuana. (Doc. 5-74, at Tr. 2179–80). And since the only marijuana recovered that exceeded 20,000 grams was found on the warehouse premises, it seems odd Plaintiff would claim confusion over which marijuana formed the basis of his conviction, particularly when he defended against that specific marijuana at trial.

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*Id.* Thus, the first inquiry is whether Petitioner failed to develop the factual basis of his claims in state court. If he did, the court cannot hold an evidentiary hearing unless he meets the § 2254(e)(2) conditions.

Even assuming Petitioner developed the factual basis for his claim that Madrigal received a deal in exchange for his testimony against Petitioner, he cannot meet the other conditions of § 2254(e)(2). Specifically, there is no new rule of constitutional law at issue, and more importantly, the fact that Madrigal received a deal could not logically have made it so no reasonable factfinder would have found Petitioner guilty, because Madrigal told the jury he expected leniency in exchange for his cooperation. This is also the case for the bill of particulars. As already discussed, even if the state appellate court considered it, the information contained in it would not be sufficient to show that had a jury considered it, no reasonable juror could have found Petitioner guilty. It merely explains the Grand Jury's findings about Petitioner's involvement in greater detail. Regarding Huerta's declaration, the bill of particulars, and the Boost Mobile cell phone policies, Petitioner has not shown he made any effort to develop the factual basis of his claims related to this evidence in state court. He makes no arguments for why he could not have called Huerta as a witness and elicited evidence in that way. Indeed, he does not even argue his attorney should have done this, though he argues his attorney should have called Robert Moore and Peter Wairegi. (*See* Doc. 16, at 38–41). As for the cell phone policy, the undersigned already noted Petitioner did not attempt to discover it prior to trial or introduce it at trial, and testimony about the cell phone establishes there is no dispute it was purchased in Cleveland, Ohio on February 10, 2009 (less than a week before

Petitioner's arrest). (Doc. 5-72, at Tr. 1687–89). Petitioner is not entitled to an evidentiary hearing; nor should the Court grant his requests to expand the record.

## CONCLUSION AND RECOMMENDATION

Following review of the record, arguments presented, and applicable law, each of Petitioner's asserted grounds for relief is noncognizable, procedurally defaulted, or otherwise lacks merit. Therefore, the Court should deny and dismiss the Petition. Furthermore, the Court should deny Petitioner's Motion for an Evidentiary Hearing and his multiple Motions to Expand the Record.

_____s/James R. Knepp, II_____
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).